CHARLES ABERNETHY, JR., BY HIS GUARDIAN AD LITEM, CHARLES ABERNETHY, SR., PLAINTIFF v. SPARTAN FOOD SYSTEMS, INC., D/B/A HARDEES, DEFENDANT

No. 9025SC922

(Filed 4 June 1991)

**Negligence § 53.8 (NCI3d) — plaintiff stabbed in restaurant — negligence of restaurant owner — directed verdict for defendant improper**

The trial court erred by granting a directed verdict for defendant in an action seeking damages for personal injuries sustained when plaintiff was attacked and stabbed with a knife in defendant's Hardees' restaurant in Hickory. Viewing the evidence in the light most favorable to the defendant, the jury could find that defendant's acting manager should have reasonably foreseen that danger to his customers was imminent, that he was therefore under a duty to warn them of the danger or to call the police, and that the breach of this duty was a proximate cause of plaintiff's injuries.

**Am Jur 2d, Premises Liability §§ 45, 48.**

APPEAL by plaintiff from judgment entered 18 April 1990 in CATAWBA County Superior Court by *Judge J. Marlene Hyatt*, granting defendant's motion for directed verdict and dismissing plaintiff's complaint. Heard in the Court of Appeals 13 March 1991.

Plaintiff brought this action seeking damages for personal injuries sustained when he was attacked and stabbed with a knife in defendant's Hardees' restaurant in Hickory. In his complaint, plaintiff alleged that his injuries were caused by the negligence of defendant in failing to warn him of dangerous circumstances at the restaurant and in failing to summon police protection.

ABERNETHY v. SPARTAN FOOD SYSTEMS, INC.

[103 N.C. App. 154 (1991)]

At trial, defendant's motion for a directed verdict was allowed at the close of plaintiff's evidence.

From the trial court's judgment dismissing plaintiff's action, plaintiff appealed.

*Rudisill & Brackett, P.A., by H. Kent Crowe, for plaintiff-appellant.*

*Tate, Young, Morphis, Bach & Farthing, by Edwin G. Farthing and Martha E. Fox, for defendant-appellee.*

WELLS, Judge.

The sole question presented in this appeal is whether the trial court erred in granting defendant's motion for a directed verdict. The party moving for a directed verdict bears a heavy burden. *Taylor v. Walker*, 320 N.C. 729, 360 S.E.2d 796 (1987). Issues arising in negligence cases are ordinarily not susceptible to summary adjudication because application of the applicable standard of care is generally for the jury. *William v. Power & Light Co.*, 296 N.C. 400, 250 S.E.2d 255 (1979) (Citation omitted). A motion by defendant for a directed verdict under N.C. Gen. Stat. § 1A-1, Rule 50(a) of the Rules of Civil Procedure tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977). On such a motion, the plaintiff's evidence must be taken as true and the evidence must be considered in the light most favorable to the plaintiff, giving the plaintiff the benefit of every reasonable inference to be drawn therefrom. *Id.* A directed verdict for the defendant is not properly allowed unless it appears as a matter of law that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish. *Id.*

It is well established that an individual who enters the premises of a store as a customer during business hours holds the status of a business invitee for purposes of establishing the duty owed to the individual by the owner of the premises. The general duty imposed upon the owner is not to insure the safety of his customers, but to exercise ordinary care to maintain his premises in such a condition that they may be used safely by his invitees in the manner for which they were designed and intended. Ordinarily the store owner is not liable for injuries to his invitees which

result from the intentional, criminal acts of third persons. It is usually held that such acts cannot be reasonably foreseen by the owner and therefore constitute an independent intervening cause absolving the owner of liability. Nevertheless, where circumstances exist which give the owner reason to know that there was a likelihood of conduct on the part of third persons which endanger the safety of his invitees, a duty to protect or warn the invitees could be imposed. *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 281 S.E.2d 36 (1981). In . . . [a] store, when the dangerous condition or activity. . . arises from the act of third persons, whether themselves invitees or not, the owner is not liable for injury resulting unless he knew of its existence or it had existed long enough for him to have discovered it by the exercise of due diligence and to have removed or warned against it. *Id. (quoting Aaser v. Charlotte,* 265 N.C. 494, 144 S.E.2d 610 (1965)).

At trial, plaintiff's evidence tended to show the following events and circumstances. On 9 July 1987 Aretha Freeman was working at defendant's restaurant known as "Hardees" as a head cashier and customer relations person. Robert Stewart was the acting intern manager on duty that same evening. At approximately 9:00 p.m. two men entered defendant's restaurant without shoes or shirts. The men, apparently intoxicated, smelled of alcohol and used profanity at the Hardees' employees. One man's nose was broken, leaving the cartilage protruding through the skin. The men ordered the Hardees' employees to take their "damn" order and called the employees "nigger" and "faggot." Although Aretha asked Mr. Stewart on two different occasions to call the police, Mr. Stewart failed to do so. At one point, Sherry Sessoms, the cashier taking the order, threatened to call the police and the men left the restaurant.

As the men were leaving the restaurant they engaged in an argument with two other men, including Cortez Martin, entering the restaurant. During the argument all the men proceeded to the Hardees' lawn outside and in front of the Hardees' restaurant. From behind the counter, the Hardees' employees could see the men through the front glass window. Aretha Freeman testified to having seen one of the previously disruptive men being hit in the face and falling to the ground. The injured man immediately jumped to his feet and ran across the street to the Days Inn. Aretha testified that Mr. Stewart was standing behind the counter

ABERNETHY v. SPARTAN FOOD SYSTEMS, INC.

[103 N.C. App. 154 (1991)]

during the fight on Hardees' front lawn and that she asked Mr. Stewart to call the police. Again, Mr. Stewart failed to call the police.

While Mr. Stewart stood at the counter, Cortez Martin then entered the restaurant and stated that the man running across the street was going to get a knife or something. At this point neither Mr. Stewart nor any Hardees' employee had called the police. As Cortez Martin left the restaurant, an older man and his granddaughter entered the restaurant. While the man and his granddaughter were waiting for their food, the plaintiff, Charles Abernethy, Jr. and two friends entered the restaurant. At no time did Mr. Stewart or any Hardees' employee give a warning to these new customers regarding the events that had transpired or the threat that the men might return with a knife.

Approximately ten minutes later, the two disruptive men reentered the restaurant, again without shirts and shoes, shouting "Where them niggers at, we're going to get them." One of the men went to the serving counter waving a knife and continued to be threatening and disruptive. Again, Ms. Freeman implored that the police be called, but Mr. Stewart did not respond. After a few minutes, one of plaintiff's friends asked the man with the knife to "calm down." At that point the man with the knife confronted the plaintiff and tried to hit him. As the plaintiff backed away, he tripped over a highchair and fell to the floor. The man then jumped on top of plaintiff, stabbed him with a knife from his left shoulder to the center of his stomach and on his neck. The man immediately ran out the door. The police were then called and they arrived within four or five minutes.

Viewing the evidence in the light most favorable to the plaintiff in the instant case, a jury could find that defendant's acting manager should have reasonably foreseen that danger to his customers was imminent; that he was therefore under a duty to either warn them of the danger or to call for police to help protect his customers from such threatening circumstances; and that the breach of this duty was a proximate cause of plaintiff's injuries. Accordingly, we hold that the trial court erred in directing a verdict for defendant and we therefore order a new trial.

New trial.

Judges GREENE and WYNN concur.